*Georgie J/Capaldi*
*TJM/kmc*

# LATTI & ANDERSON LLP    Counsellors At Law and Proctors In Admiralty

30-31 Union Wharf, Boston, Massachusetts 02109  (617) 523-1000
Portland, ME  (207) 874-6464
Facsimile  (617) 523-7394

DAVID F. ANDERSON**
CAROLYN M. LATTI*
DAVID J. BERG***

OF COUNSEL
MICHAEL B. LATTI

WITH OFFICES AT
46 Union Street, New Bedford, MA 02740  (508) 999-1029
35 Main Street, Gloucester, MA 01930  (978) 281-0605
*ALSO ADMITTED IN ME
**ALSO ADMITTED IN NH & ME
***ALSO ADMITTED IN NH, ME & NY

August 3, 2004

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

Mr. Joseph A. Regan, Esquire
Regan & Kiely LLP
85 Devonshire Street
Boston, MA 02109

**RECEIVED**
**AUG - 4 2004**
**CLINTON & MUZYKA, P.C.**

Re:  Victor Capaldi v. AGA Fishing Corporation
Civil Action No: 04-10755-JLT

Mr. Regan:

The Plaintiff has previously offered to settle all maintenance and cure claims for the remainder of the policy and in return the insurer receives a credit for maintenance and cure up to the amount of the settlement and to the extent that maintenance and cure has not exhausted gross settlement proceeds paid by the time of trial, a credit will be applied.

Plaintiff's offer was rejected.

Please treat this letter as a formal demand for relief under M.G.L. c. 176D, Section 3 and M.G.L. c 93A, Sections 2 and 9 and the regulations promulgated thereunder on the grounds that the insurer is guilty of engaging in unfair claim settlement practices prohibited by M.G.L. c. 176D, Section 3 (9)(f) by failing to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear.

At this time, there can be no question but that the liability of your insured has become reasonably clear to all objective persons on the grounds of unseaworthiness and the insurers obligation under maintenance and cure.

On November 25, 2003, the Plaintiff was employed by the AGA Fishing Corporation as a seaman and member of the crew on the F/V GEORGIE J. Capt. Silvia

EXHIBIT "F"

## LATTI & ANDERSON LLP

was hauling back the dredge on the port side and the Plaintiff was on deck when the block, without any warning fell and struck the Plaintiff. Based upon on investigation at this time, it appears that the swivel that connected the block failed. As a result of the accident, the Plaintiff's suffered a fracture at C3 C4 level and is a C4 quadriparesis.

Due to the fact that the Plaintiff was injured during the course of his employment, he is entitled to maintenance and cure until he reaches maximum medical recovery. Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 1000 (1962). The cost of Plaintiff's current medical treatment and future medical treatment clearly exceeds the remainder of the policy. This is corroborated by Mrs. Janet Nixon who was hired by Defendant to conduct a life care plan of the Plaintiff. The obligation on the part of the insured to pay maintenance and cure is "reasonably clear" within the meaning of the statute.

There is no doubt that in regards to the claim of unseaworthiness liability is clear. Courts have routinely held that the "failure of a piece of vessel equipment under proper expected use is sufficient to establish unseaworthiness." Lee v. Pacific Far East Line, Inc., 566 F.2d 65, 67 (9th Cir. 1977), Usner v. Luckenback Overseas Corp., 400 U.S. 494, 499, 91 S.Ct. 514, 517 (1971). Further, "where a ship's equipment malfunctions under normal use, the trier of fact may infer that the equipment is defective." Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir. 1993), Villers Seafood Co. v. Vest, 813 F.2d 339, 342 (11th Cir. 1987), Stachell v. Svenska Ostasiatiska Kompaniet, 386 F.2d 76, 78 (4th Cir. 1967).

We are unaware and have never been provided any information that refutes the unseaworthiness claim. Further, there is certainly no issue of contributory negligence due to the fact that the Plaintiff was standing on deck and the block fell on him. As such, the only reasonable conclusion here is that the cause of the accident was due to the unseaworthiness of the vessel. Each component of the Plaintiff's damages for past and future lost wages, past and future pain and suffering and mental anguish well exceeds the available coverage. Accordingly, liability of the insured in regards to unseaworthiness must be deemed to be "reasonably clear" within the meaning of the statute and the damages are clearly in excess of the policy.

Based on the aforementioned, there is simply no way that any objective insurer would have failed to settle. As such, it can not be disputed that the insurer has engaged in unfair and deceptive trade practices.

By not settling the case, the policy is continuing to be drawn down by unnecessary and unwarranted attorney's fees. Rather than the attorney fees being spent on the prosecution of the case for AGA Fishing Corporation, it is clear that the policy is being drawn down to pay attorneys fees to protect the individual assets of Mr. and Mrs. George Jones and Clinton & Muzyka's current client, Mr. Warren Alexander. This is evident by Mr. Muzyka's last settlement offer which was conditioned on the Plaintiff

## LATTI & ANDERSON LLP

paying off the ship mortgage and the vessel only being sold via private sale to Mr. Alexander[1]. By conditioning the settlement on Plaintiff paying off the ship mortgage, it extinguishes the individual liability of Mr. & Mrs. George Jones and solely benefits their individual interests. Conditioning settlement on the private sale of the vessel to Mr. Alexander again benefits Mr. & Mrs. Jones by extinguishing their liability for failure to fulfill the alleged purchase and sale agreement and also benefits a second client of Clinton & Muzyka, Mr. Alexander.

This action is continuing and attorneys fees are being paid to represent the individual interests of Mr. & Mrs. Jones and Mr. Warren Alexander and not the corporate interests of AGA Fishing Corporation. These "defense of costs" are needlessly reducing the limited policy available to the Plaintiff.

Additionally, the insurer has engaged in bad faith by appointing Mr. Muzyka to represents AGA Fishing Corporation when he and his firm represents the interests of Mr. & Mrs. George Jones, individually and Mr. Warren Alexander. It is bad faith to continue to pay the "alleged defense costs" to a firm which has inherent conflict in representing **equally** all the interests of AGA Fishing Corporation, F/V GEORGIE J, Mr. & Mrs. Jones and Mr. Alexander. Based on the actions of Clinton & Muzyka it is clear that the individual interests of Mr. & Mrs. Jones and Mr. Alexander have dominated and prevailed over that of AGA Fishing Corporation's interests.

The failure of the insurer to make a timely reasonable offer of settlement, as defined above, has caused the Plaintiff to suffer additional damages, which include but are not limited to, the following:

1) the need to continue the prosecution of this claim, and the accompanying costs, expenses, counsel fees and delays;

2) the reduction in the policy due to the unnecessary and unwarranted defense costs

3) the deprivation of the money which would fairly and justly compensate the Plaintiff for his November 25, 2003 accident;

3) additional and serious distress at the unnecessary delay in the resolution of the claim; and

4) other damages to be shown at trial.

---

[1] Allegedly on April 5, 2004, Mr. Warren Alexander and AGA Fishing Corporation, entered into an alleged purchase and sale agreement despite AGA Fishing Corporation and Mr. & Mrs. Jones having been actual and written notice of the Plaintiff's lien on March 17, 2004.

## LATTI & ANDERSON LLP

The insured has an obligation to timely settle valid claims. <u>Murmach v. Mass Bonding and Insurance Company</u>, 339 Mass. 184 (1954). In addition, violations of

M.G.L. c. 176D are per se violations of M.G.L. c. 93A. This subjects the company to potential exposure for double and treble damages, attorneys fees and related costs. Furthermore, M.G.L. C. 93A, Section 9 provides that the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or non-existence of insurance coverage available in payment of the claim.

The prime goal of c. 93A, Sections 9 and 11 is the "promotion of reasonable settlement offers." <u>International Fidelity Insurance Company v. Wilson</u>, 387 Mass. 841 (1983). The insurer's failure to make any timely settlement offer is inexcusable.

On behalf of our client, Victor Capaldi, we again offer to settle all maintenance and cure claims for the remainder of the policy and in return the insurer receives a credit for maintenance and cure up to the amount of the settlement and to the extent that maintenance and cure has not exhausted gross settlement proceeds paid by the time of trial, a credit will be applied.

If the insurer fails to accept this offer, we will seek all remedies under the consumer protection statute including but not limited to the following:

1)  Said insurer pay the policy limits;

2)  Said insurer pay interest at the rate of 12% per annum on the policy limits;

3)  Said insurer pay treble damages.

4)  Said insurer pay all reasonable attorney's fees, interest and costs incurred as a result of its unfair claim settlement practices.

Additionally, if judgment is rendered in excess of the policy limits, the Plaintiff intends to seek an additional attachment of all of your insured's assets in an amount sufficient to cover the excess judgment and will pursue Mr. and Mrs. Jones individually.

Please govern yourself accordingly.

4

# LATTI & ANDERSON LLP

Very truly yours
LATTI & ANDERSON LLP

Carolyn M. Latti

CML:dmt

cc:   CERTIFIED MAIL RETURN RECEIPT REQUESTED
Flagship Group, LTD.
5000 World Trade Center
Norfolk, VA 23510-1624

CERTIFIED MAIL RETURN RECEIPT REQUESTED
Mr. Thomas Muzyka, Esquire
Clinton & Muzyka, P.C.
One Washington Mall, Suite 1400
Boston, MA 02108

CERTIFIED MAIL RETURN RECEIPT REQUESTED
Ms. Nancy Nixon
The Walters Nixon Group, Inc.
123 North Union Avenue, Suite 105
Cranford, NJ 07016