UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **VICTOR P. CAPALDI,** | CIVIL ACTION |
| Plaintiff, | NO: 04-10843-JLT |
| vs. | |
| **F/V GEORGIE J, her engines, boilers, equipment, machinery, tackle, furnishings, apparel, appurtenances, etc., including but not limited to, its commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, history, privileges, or entitlements arising from, issued to, attaching to, or appurtenant to said vessel,** *in rem* | |
| Defendant. | |

## OPPOSITION OF CLAIMANT, WARREN ALEXANDER, TO PLAINTIFF'S MOTION FOR INTERLOCUTORY SALE OF F/V GEORGIE J ON SEPTEMBER 10, 2004

Now comes Claimant, Warren Alexander, by his counsel, Clinton & Muzyka, P.C., and files his Opposition to Plaintiff's Motion For Interlocutory Sale of F/V GEORGIE J on September 10, 2004.

### I.   FACTS

Plaintiff alleges that he was a member of the crew of the F/V GEORGIE J (O.N. 502064) on November 25, 2003 while the vessel was dragging for scallops in navigable waters off the coast of Massachusetts.  He further alleges that

he sustained a personal injury at that time.  Claimant, Warren Alexander, has no knowledge of these factual allegations and assumes, for purposes of this motion, that the allegations are true.

On November 25, 2003, the F/V GEORGIE J was, upon information and belief, owned and operated by AGA Fishing Corporation, whose President is Antonette J. Jones.

Warren Alexander is from of Cape May, New Jersey.  He is actively engaged in the commercial fishing industry, with a place of business in New Bedford, Massachusetts.

The F/V GEORGIE J is an 89 foot Eastern rigged fishing vessel which was built in 1966 in Sturgeon Bay, Wisconsin.  It has licenses to engage in the commercial scallop fishing industry and was, upon information and belief, so engaged at the time of the alleged incident.  As of May 20, 2004, the vessel held 16 fishing permits issued by the National Marine Fisheries Service.  A list of the permits is attached to the Purchase and Sale Agreement appended hereto.

On April 5, 2004, Claimant Warren Alexander entered into a purchase and sale agreement with AGA Fishing Corp. to purchase the vessel and the fishing permits "as is where is, free and clear of all liens."  The purchase

price of the vessel was agreed to by the parties after arms length negotiations.

Claimant Warren Alexander filed a Claim in this Honorable Court on June 18, 2004, alleging that he has an ownership interest in the F/V GEORGIE J pursuant to the aforesaid Purchase and Sale Agreement. On June 24, 2004, Warren Alexander filed an Answer and Counterclaim for Specific Performance.

## II.   UNSUPPORTED ALLEGATIONS

Claimant initially notes that the Motion For Interlocutory Sale of the Vessel is unsupported by any affidavits or appraisals. In this case, the lack of an affidavit or appraisal is central because the Plaintiff seeks to sell the vessel with a minimum bid condition of $1,000,000 without any expert opinion of value.

The Memorandum of Law in Support of the Motion asserts at page 3 that over $500,000 has been paid in maintenance and cure benefits and Defendant's attorney fees. The Memorandum also asserts "The F/V GEORGIE J'S value with its permits, if sold at auction, is between $1,100,000.00 and $1,500,000.00." There is absolutely no support for this representation. Accordingly, it is particularly prejudicial to Claimant Warren Alexander because he has a Purchase and Sale Agreement for the

vessel at the level of $900,000.00, which was arrived at during arms length negotiations between experienced businesspeople. See for example, *Wong Shing v. M/V MARDINA TRADER, 564 F.2nd 1183, 1189 (C.A.Canal Zone 1977)("The appellant's testimony as to the value of the ship is undocumented.")* Plaintiff also asserts that he has incurred costs of storage at the level of $13,000, which is increasing at the level of $3,000 to $4,000 per month. This also is unsupported by any affidavit and is contrary to the information provided in the Motion For Substitute Custodian which indicated dry storage at the rate of $16 per foot ($1,376)[1]

### III. **PREMATURE**

Plaintiff has brought this Motion pursuant to Rule E(9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Plaintiff seeks this Honorable Courts permission for an interlocutory sale of the vessel, with the proceeds deposited in this Honorable Court pending determination of the merits of the cause of action.

Claimant asserts that the motion is premature. The Complaint herein was filed on April 28, 2004. The

---

[1] Note, that this is a flat fee for dry storage and not based on a per month charge. It would appear that haul out and on land storage would have been appropriate in this case.

Memorandum of Law indicates that the vessel was arrested on May 4, 2004. There is no return of service noted on the docket.

In *U.S. v. F/V FORTUNE, 1987 A.M.C. 2351, 2352 (D.Alaska 1987),* it was noted that

> A motion for an interlocutory sale is not typically granted until enough time has passed to allow defendants to provide a bond to secure release of the vessel. **As a general rule, defendants are given at least four months to bond a vessel absent some other considerations.** *See Ferrous Financial Services Co. v. O/S Artic Producer, 1984 AMC 134, 135, 567 F.Supp. 400, 401 (WD Wash. 1983)*

Here, the vessel was apparently not arrested until May 4, 2004, over three months ago. Accordingly, the Motion is premature.

**IV.    EQUITABLE POWER OF THIS HONORABLE COURT**

Rule E(9)(c) governs the sale of the vessel. That section merely provides that the sale shall be by a Marshall and that the proceeds of the sale are to be deposited into the registry of the court. Otherwise, how the sale is to be conducted and the terms of the sale are left to the discretion of this Honorable Court. *J.Ray McDermott & Co., Inc. v. Vessel Morning Star, 457 F.2nd 815 (5th Cir. 1972); Maine National Bank v. F/V EXPLORER, 663*

*F.Supp. 462 (D.Me. 1987) (Judge Carter ordered a "special sale" and entertained the prospect of a private sale)*

In *Cates v. U.S., 451 F.2nd 411 (5th Cir. 1971),* Chief Judge Brown discussed the role of the court acting in admiralty:

> Over a century ago this high calling was vividly described by Justice Story. 'A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction.' The *David Pratt, Fed.Cas. No. 3597 (DC Maine 1839)*

*Id.* at 414(footnote omitted).

Plaintiff contends that he has sustained a significant personal injury from which he is permanently disabled. Plaintiff is seeking to have the vessel sold at a Marshall's Sale, with the proceeds deposited in the registry of this Honorable Court.

"A forced sale will rarely produce the price which could be obtained under more favorable circumstances." *Wang Shing v. M/V MARDINA TRADER, 564 F.2nd 1183, 1187-88 (5th Cir. 1977).* See also, *Gowen, Inc. v. F/V QUALITY ONE, 2000 WL 893402* ("Further, it is well established that, given the inherent circumstances of a forced sale, a foreclosure sale is not expected to generate a price equal to or even near the market value of a piece of property.

Cf. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537-38, 114 S.Ct. 1757 (1994)."). Should this matter proceed to a Marshall's Sale, there is a distinct and judicially recognized likelihood that it will not produce net proceeds equal to the consideration obtained from the sale pursuant to the Purchase and Sale Agreement dated April 5, 2004.

Further, the terms of the sale, as propounded by the Plaintiff, are unfair and not likely to lead to a confirmable sale. Plaintiff proposes a minimum bid of $1,000,000, but only requires a deposit by the successful bidder of $10,000, 1% of the purchase price. This low deposit is contrary to the terms and requirements as set by the U.S. Marshall's Office and is calculated to facilitate bidding by individuals not likely to be able to obtain financing to finalize the transaction. Claimant Warren Alexander requests that if this Honorable Court allows the sale to proceed, subject to the suggested minimum bid, then the deposit be set pursuant to the U.S. Marshall's requirements, to wit: 10% of the purchase price, which is $100,000, with the balance of $900,000 payable within 10 days.

## V. REQUESTED REMEDY

This Honorable Court has substantial equitable powers to structure the sale of the vessel to benefit all of the parties involved herein. Claimant Warren Alexander prays this Honorable Court deny the Plaintiff's Motion as premature, based upon the argument contained in Section III of this Memorandum. In the alternative, and in light of the assertions herein, Claimant Warren Alexander prays this Honorable Court schedule a hearing in order to determine the value of the vessel and its appurtenances, including the fishing permits, in order to enforce a private or "special sale", *Maine National Bank v. F/V EXPLORER, 663 F.Supp. 462 (D.Me. 1987),* of the vessel. The judicial sale of a vessel pursuant to Rule E(9) of the Supplemental Rules for Certain Admiralty and Maritime Claims is within the equitable powers of this Honorable Court, and includes the power to order a private sale. Russell, The Foreclosure of Preferred Ship Mortgages, 48 Consumer Fin. L.Q. 136 (1994). This will facilitate court oversight of the sale and garner the most favorable terms for the benefit of all the parties involved.

Claimant Warren Alexander additionally prays this that if this Honorable Court allows the matter to proceed to a public auction, that before any sale of the vessel is

confirmed, this Honorable Court rule on the validity of Claimants counterclaim for Specific Performance.  See *Phoenix Marine Enterprises, Inc. v. One (1) Hylas 46' Convertible Sportfisherman*, 1987 A.M.C. 2548 (S.D.Fla. 1987).

**WHEREFORE,** Claimant, Warren Alexander, prays this Honorable Court deny the Motion For Interlocutory Sale of the Vessel or, in the alternative, to schedule a hearing in order to establish the value of the vessel for a private sale of the vessel to Warren Alexander, or his designee, free and clear of all liens, pursuant to the Purchase and Sale Agreement dated April 5, 2004.

        Respectfully submitted,
        By his attorneys,

        **CLINTON & MUZYKA, P.C.**

        <u>**"/s' Robert E. Collins"**</u>
        **Robert E. Collins**
        **BBO NO. 555843**
        One Washington Mall
        Suite 1400
        Boston, MA 02108
        (617) 723-9165

Dated:   August 10, 2004