UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VICTOR P. CAPALDI <br>     Plaintiff <br><br> v. <br><br><br> F/V GEORGIE J, her engines, boilers, equipment, machinery, tackle, furnishings, apparel, appurtenances, etc., including, but not limited to, it s commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, history, privileges, or entitlements arising from, issued to, attaching to, or appurtenant to said vessel, in rem <br>     Defendant | Civil Action <br> No.04-10843-JLT |

**PLAINTIFF'S OPPOSITION TO CLAIMANT'S AGA FISHING CORPORATION RENEWED MOTION TO STAY THE PROCEEDINGS**

Now comes the Plaintiff Victor P. Capaldi and, by and through his attorney, submits Plaintiff's Opposition to Claimant's AGA Fishing Corporations Renewed Motion to Stay Proceedings. As grounds, the Plaintiff states the following:

The Claimant AGA Fishing Corp. filed a Motion to Stay on June 28, 2004. Plaintiff filed an opposition on July 12, 2004. As of date, this Honorable Court has not ruled on the motion. For no apparent reason, the Claimant has renewed its Motion to Stay the Proceeding. The Plaintiff incorporates its arguments set forth in Plaintiff's Opposition to Claimant's AGA Fishing Corporation Motion to Stay the Proceedings. Based on the Claimant's newest Motion to Stay the Proceedings, the Plaintiff must address the following issues.

The value of the F/V GEORGIE J is largely dependent upon the permits the vessel holds. Currently, the F/V GEORGIE J based on its permits can scallop 120 days from May 1, 2004 to May 1, 2005. The days available to scallop makes the vessel valuable. If the vessel is not sold within the month of September then, as each day goes by, the F/V GEORGIE J will lose for the year its days at sea. 120 days is four months straight of fishing. To fish 120 days, a vessel realistically needs 6 months to fish. In order for the potential buyer to scallop the full 120 days, the F/V GEORGIE J needs to be sold in September. The loss of days fishing decreases the value of the boat.

In regards the value of the vessel, the Plaintiff has learned new information which indicates that the value of the F/V GEROGIE J is worth between $1 to $1.75 million. This value is based upon recent sales of similar vessels. Upon information and belief, recently a vessel that was same class and size as F/V GEORGIE J, the F/V CASSIOPIA sold for a $1 million dollars. Additionally, upon information and belief, the F/V INDEPENDENCE, a similar size and class to the F/V GEORGIE J sold for $1.75 million to Warren Alexander. As this Court is aware, Warren Alexander, has filed a claim in this action to enforce an alleged purchase and sale agreement between Warren Alexander and Mrs. Antoinette Jones for only $900,000.00.

In regards to the alleged purchase and sale of Warren Alexander, upon information and belief, Mr. Alexander's purchase price of the vessel for only $900,000.00 is an inside deal. Upon information and belief, the purchase amount is for $900,000 with Mr. Alexander paying a kickback of cash under the table to the owner of the F/V GEORGIE J, Mrs. Jones. By having a kickback, the Plaintiff does not receive the money and the Mrs. Jones benefits by receiving money from the sale of the vessel. This kickback explains why Mr. Alexander and Mrs. Jones

2

are going to extreme lengths to enforce a contract which from the being was null and void since the vessel did not have marketable title at the alleged time of signing the agreement since Mrs. Jones was aware of the Plaintiff's lien on the vessel of $10,000,000.00.  It also explains why Mr. Alexander and Mrs. Jones are spending so much time and money to enforce the contract.  If Mr. Alexander wants the vessel, he can purchase it free and clear of any liens at the interlocutory sale.  Nothing prevents him from buying the boat at the auction.  The only problem is at the auction, there is no kickback to Mrs. Jones and Mr. Alexander will have to pay more money for the F/V GEORGIE J.

Additionally, at a private sale, more than likely the mortgage on the vessel would be paid off to the bank from the proceeds of the sale of the vessel. At an auction, the Plaintiff's lien trumps the mortgage, the mortgage would not get paid off and Mrs. Jones would be individually responsible for the mortgage.

In regards to the issue of the settlement in this case, nothing has changed.  Settlement negotiations are stalled. Claimant, without any authority or request from this Honorable Court has gone into explicit detail regarding settlement negotiations, identifying amount and figures that the Claimant has offered.  The Plaintiff feels it is not appropriate for the Claimant to talk settlement numbers in front of the finder of fact and will not respond specifically to Claimant's numbers.

Plaintiff will state that it will not accept Claimant's conditional settlement offers and Claimant will not provide a settlement the Plaintiff seeks without the conditions and an increase in value.   Staying the action will not accomplish anything.  Rather, it will only increase Plaintiff's costs by delaying the interlocutory sale of the vessel and delaying discovery.

Plaintiff's 93A letter to the insurer, Flagship Group LTD and its attorney, Mr. Joseph Regan was a direct result of the Claimant's counsel, Clinton & Muzyka's unfair and deceptive settlement practices in it conditioning the settlement to benefit current clients of Clinton & Muzyka. The 93A letter is a prime example of how settlement negotiations are stalled.

An interlocutory sale of the vessel, discovery, depositions and a trial is what will resolve this matter. A stay will not.

In regards to the interlocutory sale of the vessel, the Claimant has provided no legal or factual grounds that opposes the sale of the vessel. Based on the lack of opposition by the Claimant, the Plaintiff's request for interlocutory sale should be granted.

In regards to the issue of maintenance and cure, Claimant has stated to the Court that maintenance and cure "is being satisfied and is not in issue." This is false. Medical bills from eight months ago are still not paid. Plaintiff continuously receives bills from collection agencies regarding unpaid bills. This past week, Brooks Pharmacy cut off providing prescriptions to the Plaintiff since there bill had not been paid since March 2004. It was not until Plaintiff's counsel demanded the immediate payment of the pharmacy bills that they were finally paid and Plaintiff was able to refill prescriptions. Claimant failure to timely pay medical bills and provide cure in a reasonable matter further indicates Claimant continuous efforts to stonewall and delay this action.    Based on the foregoing, Plaintiff requests that this Honorable Court deny Claimant's Motion for a Stay and grant Plaintiff's Motion for Interlocutory Sale of the F/V GEORGIE J.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court deny Claimant's Renewed Motion to Stay the Proceeding.

        Respectfully submitted for the
        the Plaintiff, Victor P. Capaldi,
        by his attorney,


        <u>/s/ Carolyn M. Latti</u>
        /s/ Carolyn M. Latti
        BBO #567-394
        David F. Anderson
        BBO#560-994
        LATTI & ANDERSON LLP
        30-31 Union Wharf
        Boston, MA 02109
        (617) 523-1000

Dated: August 24, 2004