**UNITED STATES DISTRICT COURT**
for the
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2004 SEP 22  P 3: 24

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| **VICTOR P. CAPALDI**<br>**Plaintiff**<br><br>v.<br><br>**F/V GEORGIE J, her engines, boilers, equipment,**<br>**machinery, tackle, furnishings, apparel, appurtenances,**<br>**etc., including, but not limited to, it s commercial fishing**<br>**licenses, permits, limited entry rights, quotas, moratorium**<br>**permits/licenses, and all other fishing rights, history,**<br>**privileges, or entitlements arising from, issued to,**<br>**attaching to, or appurtenant to said vessel, *in rem***<br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action
No. 04-10843-JLT**

## PLAINTIFF'S EMERGENCY MOTION TO HAVE COURT DETERMINE THE AMOUNT OF DEPOSIT FOR THE INTERLOCUTORY SALE OF THE F/V GEORGIE J ON OCTOBER 20, 2004

Now comes, Plaintiff, Victor Capaldi, and, by and through is attorney, submits Plaintiff's

Emergency Motion to Have the Court Determine the Amount of Deposit for the Interlocutory

Sale of the F/V GEORGIE J on October 30, 2004.  As grounds the Plaintiff states the following:

On September 13, 2004, at a hearing, this Honorable Court allowed the interlocutory sale

of the F/V GEORGIE J.  At the auction, it is required that the highest bidder deposit with the

United States Marshal on the day of sale a certain sum of  in cash or certified check payable to

the United States Marshal for the District of Massachusetts.

Initially, the Plaintiff requested the deposit amount of  $10,000.00.  Claimant Warren

Alexander's and the owner of the F/V GEORGIE J, Ms. Jone's attorney, Mr. Muzyka objected to

the amount of the deposit, requesting that the deposit be 10% of the sale. This Court ordered that the amount of the deposit be determined by the United States Marshals and entered into a proposed order that would be approved by the Court.

Since last Monday, the United States Marshals have been unable to provide a deposit amount and the parties have been unable to agree on an amount. Over the past week, both parties have met and talked with the United States Marshals office. During a conference call, on September 15, both parties spoke with Ms. Alison Hodgkins. In regards to the amount of the deposit she stated that there are no guidelines as to the amount of the deposit and in the past 10% has been used but it must be **reasonable**. Based on the minimum bid of $1,000,000.00, a 10% deposit would be $100,000.00 which is unreasonable. Ms. Hodgkins has been unable to find any statute, information or guidelines as to what determines the amount of the deposit.

In order to resolve the issue, Plaintiff's counsel suggested to counsel for Mr. Alexander and Ms. Jones, that the deposit be $20,000.00, the amount in the alleged contract between Mr. Alexander and Ms. Jones for the sale of the F/V GEORGIE J. Mr. Muzyka refused to agree to $20,000.00.

Plaintiff's counsel spoke with Ms. Talevera, administrative support for the United States Marshals on September 21, 2004 regarding the sale of the F/V GEORGIE J. Ms. Talevera gave a date for the auction of October 20, 2004 at 12:00 pm. In regards to the deposit, she stated there are no regulations or guidelines as to the amount of the deposit. Rather, she stated the orders usually have the amount of the deposit already in it.

The manual for the United States Marshals, *Exhibit A,* does not have any guidelines pertaining to the amount of deposit required for a buyer to deposit into the registry of the Court.

*Exhibit A, p.8 Section 6.3-17.* Further, there is no statutory guideline as to the amount of the deposit. Rather, it is a reasonable amount determined either by the Plaintiff's counsel requesting the sale and endorsed by the Court or determined by the Court. In the case of *D.N. Kelley & Son, Inc. v. M/V NEW MOON* , this Court, Judge Tauro, ordered a deposit of $10,000.00. *Exhibit B.* Additionally, in the case of *North Folk Welding & Steel Supply, Inc., Greenport Yacht & Shipbuilding Co., Inc. and Hands Fuel Company, and Long Island Development Corp., and Small Business Administration v. F/V PRINCE OF PEACE*, civ. Act. No.: 03-10369, Magistrate Judge Dein ordered a deposit of $10,000.00. *Exhibit C.* Clearly, as Mr. Alexander's and Ms. Jones attorney's have suggested, the deposit is not 10%.

Using a percentage only complicates issues. It is going to be advertised in the papers as to the amount of deposit that is required. If a percentage is used, a potential buyer does not know what amount the certified check or cash it should bring to the auction.

The Plaintiff requests a deposit of $20,000.00. A deposit of $20,000.00 is reasonable and consistent with past practices of this Court and consistent with Mr. Alexander's and Ms. Jones previous deposit on the alleged contract of the F/V GEORGIE J. It is hypocritical of Alexander and Jones to now say that a deposit of $100,000.00 or more is required when in the alleged contract between Alexander and Jones for the purchase of the F/V GEORGIE J, the deposit of $20,000.00, 2.2%, was perfectly acceptable to Jones and Alexander. Now, in this proceeding, 20,000.00 is not.

Claimant Alexander's and Ms. Jones request of 10% deposit, which equates to $100,000.00 or more is unreasonable and serves no purpose. Rather, a $100,000 or more deposit at the time of the sale limits the pool of potential buyers to only those who have that amount of

3

cash on hand. Mr. Muyzka's argument that a high deposit is needed since there is a correlation between the amount of the deposit and the ability of the potential buyer to obtain financing[1] is without merit. Mr. Muzyka is making an unsubstantiated correlation between the amount of cash on hand at the date of the sale to make a deposit and the ability to obtain financing for the F/V GEORGIE J.

The Marshal's guidelines have a mechanism to deal with the issue of the highest bidder not having the appropriate financing and a deal falling through. Under the guidelines, the Marshals are to write down the name and address of the second and third highest bidder and in the

> event the highest bidder does not meet the requirements for the deposit or, subsequently for payment of the balance, all the names should be presented to the court at the hearing that will follow. Under such circumstances the sale does not automatically revert to the highest bidder. It is within the discretion of the court as to whether the sale should be confirmed to anyone other the an the original highest bidder or whether a new sale will have to take place. 6.3-17g(6), se also 6.3-19(a)

The Marshall's guidelines have clearly taken into account the scenario where a potential buyer is unable to finance the purchase price of the vessel. Having a deposit of $100,000.00 or more is unreasonable and does nothing more than to limit potential buyers and limit the free nature of the auction.

Based on the foregoing, the Plaintiff requests that this Honorable Court enter an order, filed in conjunction with this motion, that the United States Marshal be directed to require at said sale that the highest bidder deposit with the United States Marshal on the day of sale the sum of $20,000.00 in cash or certified check payable to the United States Marshal for the District of

---

[1] See Opposition of Claimant, Warren Alexander, to Plaintiff's Motion for Interlocutory Sale of F/V GEORGIOE J on September 10, 2004, p.7.

Massachusetts and this Honorable Court endorse the order filed herewith.

WHEREFORE, Plaintiff moves that this Court order that the United States Marshal be directed to require at said sale that the highest bidder deposit with the United States Marshal on the day of sale the sum of $20,000.00 in cash or certified check payable to the United States Marshal for the District of Massachusetts with the balance to be paid at or before the confirmation hearing and that this Honorable Court endorse the order filed herewith.

Respectfully submitted,
VICTOR CAPALDI,
By his attorney,
CAROLYN M. LATTI

Carolyn M. Latti
BBO #567-394
David F. Anderson
BBO #560-994
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
Tel. (617) 523-1000

DATED: September 22, 2004

LEXSEE 1987 AMC 1051, AT 1053

Copyright © 1987 American Maritime Cases, Inc.

MANUAL FOR UNITED STATES MARSHALS

[NO NUMBER IN ORIGINAL]

U.S. DEPARTMENT OF JUSTICE

*1987 AMC 1041*

November, 1986, Manual Revised

**APPEAL-STATEMENT:**

Previous version printed at *1985 AMC 273*

**OPINION:**

[*1041] 6.3 ADMIRALTY

6.3-1. JURISDICTION. Admiralty and maritime jurisdiction is part of the judicial power conferred upon the courts of the United States by the Constitution which provides "[t]he judicial power shall extend . . . to all cases of admiralty and maritime jurisdiction." (Article III, Section 2.) Under the Judiciary Act of 1789, concurrent jurisdiction over maritime claims (except *in rem* actions) is extended to the state courts. Thus, unless a statute otherwise provides, admiralty jurisdiction is not exclusively in the Federal courts.

a. *Uniformity Requirements.* Admiralty matters, whether tried in a Federal court or a state court, must be treated uniformly and the substantive law of admiralty -- and many procedural requirements thereunder -- must be exercised with uniformity in both courts.

b. *In Rem Actions.* A state court may not entertain a true *in rem* action. That action involves a direct suit against the vessel, cargo, or specified property as a named defendant. (See paragraph 6.3-3a.)

c. *Admiralty Jurisdiction.* Basically, the admiralty jurisdiction of the United States extends to all navigable waters, salt or fresh, tidal or nontidal, natural or artificial, which are used or capable of being used in interstate or foreign commerce. (Some courts have held that admiralty jurisdiction extends to waters which, although actually not navigable in fact, may be capable of being made navigable.) Dependent upon specific statutes, the authority of a district court is generally limited to the geographical limits of the district, including the territorial waters bordering the district (a distance of approximately three miles offshore). On the other hand, bodies of water which are wholly located within a single state and are [*1042] not navigable nor used in interstate or foreign commerce would not be included in the admiralty jurisdiction of the United States. The admiralty and maritime jurisdiction of the United States of America, in reference to the applicability of the law involved, should not be confused with the physical limitation of the jurisdiction of the court involved (e.g., a collision involving an American vessel on the high seas may result in the application of admiralty law as interpreted in the United States but does not give a Federal court jurisdiction *in rem* until the vessel has come within the territorial jurisdictional authority of the district court).

6.3-2. U.S. MARSHAL'S AUTHORITY. The Marshals Service becomes involved in admiralty matters by carrying out orders of the Federal courts (Title *28 U.S.C. 569*) as well as mandates found in the Supplementary Rules of Civil Procedure.

6.3-3. TYPES OF MARITIME ACTIONS. There are two types of maritime actions: proceedings *in rem* and *in personam.*

a. *Proceedings In Rem. In rem* actions are brought to enforce any maritime lien, which is a right against a particular vessel, her engines, boilers, appurtenances, furnishings, fittings, etc., her bunkers, or cargo involved directly in the incident. The action could have stemmed from a ship mortgage, repairs, the supplying of necessaries, crew wages, collision liability, loss of or damage to cargo, bodily injury, salvage, or wrongful death. Execution of a Warrant of Arrest of the vessel or cargo is necessary to acquire jurisdiction in an *in rem* action.

b. *Proceedings In Personam. In personam* actions are proceedings against a person or persons (e.g., the owner or owners of a vessel). An action *in personam* is used to secure a judgment against the person rather than against the vessel or other property involved in the incident. Often an action will be brought both *in personam* and *in rem*. The Writ of Maritime Attachment (also known as "Foreign Attachment") and/or Garnishment is used to acquire personal jurisdiction over a defendant not found in the district (*not being* present therein for purposes of service as opposed to doing business in the district) and also acts as security for any judgment that might [*1043] be obtained in the *in personam* action. (Additionally, although technically not an admiralty action, the Marshals Service may come into possession of a vessel or other maritime property as the result of enforcement by a creditor of a Federal court judgment or state court judgment. This Section should be followed for the protection, maintenance, and upkeep of that property.)

6.3-4. VENUE. Venue pertains to the district where the case is filed. If the seizure is made within a judicial district of the United States or the vessel is subsequently brought into the district after being seized elsewhere (e.g., under U.S. Customs Service law on the high seas), the Federal court of that district has jurisdiction. (Venue in forfeiture actions under the Controlled Substances Act is larger. See paragraph 6.3-4c, below.)

a. An *in rem* suit in an admiralty action must be started in the district where the vessel is located [Supplemental Rules C(2) and E(3) (a)]. However, if the vessel cannot be found or located therein, then the complaint may be filed in any district of the United States and the allegation made that it is expected within the district within the pendency of the action. The court will not acquire jurisdiction until the vessel is actually arrested within that district or the parties otherwise agree to jurisdiction.

b. When process *in rem* or of maritime attachment or garnishment has been issued, the vessel may be seized only in the district issuing the process [Supplemental Rule E(3) (a)]. Unless otherwise authorized by statute, a U.S. Marshal may not arrest, attach, or garnish property outside the territorial jurisdiction of his/her district [Supplemental Rule E(3) (a)].

c. In forfeiture actions under the Controlled Substances Act (Title *21 U.S.C. 881),* courts with venue include:

1) The district where the property was originally seized.

2) The district where the property is currently located.

3) The district in which a defendant owner of property is located or is being prosecuted.

d. Where seizures are made pursuant to U.S. Customs Service laws (Title *19 U.S.C. 1602 et seq*), storage of the property outside the judicial district in which it was seized shall in no way [*1044] affect the jurisdiction of the court. Therefore, for example, a Warrant of Arrest issued from the district in which the seizure took place can be executed upon the property even though the property is moved outside the jurisdiction of the issuing district. In such cases the warrant of arrest *in rem* will be forwarded to the district where the property is located.

6.3-5. BASIS FOR SEIZURE. Upon authorization of the court or the clerk, dependent upon the circumstances as specified in Supplemental Rules C(3) or B(1), the clerk will issue a Warrant for the arrest of the vessel or other property that is the subject of the action or issue a Writ of Maritime Attachment or Garnishment and deliver it to the U.S. Marshal for service.

a. The warrant or writ is directed to the U.S. Marshal and commands him/her to arrest, attach, or garnishee the vessel, property, or cargo to hold it pending further order of the court.

b. In cases involving maritime attachment the complaint must include a request for issuance of the Writ of Maritime Attachment and must be accompanied by an affidavit by plaintiff or his/her attorney that the *in personam* defendant cannot be found in the district [Supplemental Rule B(1)]. This affidavit should state what efforts were undertaken by the plaintiff to locate the defendant (e.g., checked last known address and defendant not located there or it is outside the district; no listing in the telephone book, etc.). The U.S. Marshal is entitled to rely on these statements and does not have to commence an independent search for the defendant.

1987 AMC 1041, *

6.3-6. GENERAL PROCEDURES. The Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty Maritime Claims, generally, do not provide guidance for the U.S. Marshal in the execution of the service of process in these matters. There are basic procedures that should be reviewed and followed in order to achieve the arrest, attachment, or garnishment.

a. *Receipt of Process.* Upon receipt of a Warrant or Writ the U.S. Marshal should ensure that sufficient copies of the warrant or writ, summons and complaint, and any other pertinent documents (e.g., an order for substitute custodian), have been [*1045] received; that adequate instructions are included therewith; that appropriate advance fees are received; and that the duties, obligations, and responsibilities of the U.S. Marshal, the attorney for plaintiff, and the substitute custodian, as appropriate, are discussed and understood by all concerned and reduced to writing, as appropriate, on Form USM-285 (U.S. Marshals Service Process Receipt and Return). Whenever possible, the attorney for the plaintiff should contact the U.S. Marshal to discuss the procedures, proposed orders and instructions *before* commencing the initial procedures (e.g., to discuss any problem related to the seizure, deposits, insurance, substitute custodian orders, etc.).

b. *Documents.* The warrant or writ should be checked to ensure that no required information has been omitted and, most importantly, to determine whether there are specific instructions which may require special action by the U.S. Marshal. As an example, the warrant may include information as to whether the vessel may receive or discharge cargo while under seizure. Beyond form, however, the position of the Department of Justice in these matters is that if the warrant or writ is valid on its face and all other conditions concerning the issuance of the process have been met, then the U.S. Marshal has no alternative but to execute the process. If there are any questions which cannot be resolved, the U.S. Marshal may apply to the court for further directions.

c. *Instructions to U.S. Marshal.* Accompanying the documents shall be a complete Form USM-285, filled out by the plaintiff, giving complete detailed instructions for service of process, including the exact location and description of the vessel or property to be seized and any other actions required of the U.S. Marshal subsequent to the service. Again, it usually will be necessary for the U.S. Marshal to assist with the preparation of these instructions to ensure that all things being requested by the attorney are indicated in detail and clearly on Form USM-285 and are consistent with the orders that will be or have been obtained. The best situation is for the seizing party to contact the U.S. Marshal before obtaining the order. This makes it easier for that party, the U.S. Marshal, and the [*1046] court to arrange for the issuance of proper and comprehensive seizure orders while also providing for a "smooth" seizure.

d. *Special Circumstances.* Wherever possible, information should be received as to the condition of the vessel ("live" or "dead"); whether a crew is aboard; whether machinery is operable or will have to be operated; whether the vessel is moored or anchored; whether cargo is aboard and, if so, whether it is perishable or nonperishable; whether repair work is being performed; the condition of the vessel; whether a crew will have to be maintained aboard; whether water transportation will be needed; whether the cargoes are dangerous or hazardous in nature; the estimated value of the vessel and the cargo; the registry of the vessel; whether the vessel will have to be moved; and any other information that would pertain to the protection, maintenance, and upkeep of the vessel or the property while under seizure. If cargo work or repairs are being undertaken, the court order should provide whether it is to continue; who will be responsible for the performance of the work; and whether the expenses related to such work shall be considered administrative expenses. There are many situations where the plaintiff only intends to arrest or attach cargo or property upon a vessel (e.g., bunkers), but the aforelisted information will still be necessary and the same approach required as in arresting or attaching the vessel itself since the seizure of the cargo or the property will result in the vessel being detained until provision is made for the removal of the cargo or the property.

e. *Advance Deposits for Costs.* Pursuant to Title *28 U.S.C. 1921,* the U.S. Marshal shall collect in advance sufficient fees to cover the cost of service of the process, U.S. Marshal's insurance, and 10 days keeper and maintenance fees [Supplemental Rule E(4) (e)]. Due to local labor situations and prevailing work conditions, some districts are required to pay a higher hourly or daily rate for keepers, wharfage, etc., than other districts. Regardless of the going rate, the U.S. Marshal shall insist on a 10 day advance for his/her expenses. The custody and safekeeping of vessels pursuant to civil, admiralty, or bankruptcy actions on behalf of private litigants rests with the [*1047] U.S. Marshal effecting the seizure and are conditioned upon the advance of sufficient funds by the moving party to cover the costs incidental to the safekeeping and custody requirements. If special circumstances exist which will require greater expenditures, then the required deposit should take that into account. If a substitute custodian is to be immediately appointed, then the amount of the deposit required should also take that into consideration. If more than one plaintiff is seizing the vessel or property then consideration should be given to whether more than one deposit is required, how it is to be paid, and who will pay it. Generally, the parties will work this out amongst themselves. Procedures should be

avoided where proportionate payments would be received from the various plaintiffs. The "initial" plaintiff should be made responsible for making the payments.

1) While under seizure the vessel and/or the cargo or property is to be protected and kept safely in essentially the same condition as when it was arrested or attached. Unless otherwise ordered by the court or provided in the local admiralty rules, all cargo work or repairs is to stop at the time of seizure. No movement of the vessel or improvements or work of a special nature, except emergency actions, may be undertaken without an order of the court.

2) Following the seizure of a vessel, cargo, or other property, the party initiating such action will be periodically requested to deposit additional funds in advance with the U.S. Marshal as may be necessary to cover costs until the litigation is concluded. If the party initiating the seizure action fails to deposit requested funds, the U.S. Marshal shall seek relief from the district court including, but not limited to, the right to request the release of the property from arrest or attachment with a reservation of the right to proceed against the plaintiff for any balance due. The U.S. Marshal should not wait until the funds have been expended before approaching the court for the requested relief. Notice of such application shall be given to any or all of the parties as the court may direct [Supplemental Rule E(4) (d)].

[*1048] a) In accordance with Title 31 U.I.S.C. 1341, no government employee, including the U.S. Marshal, has the right to obligate government funds to defray costs or expenses incurred in seizures on behalf of private litigants. Therefore, no vessel or property should be seized without receipt of the required deposit. This mandate applies to actions by seamen except in the Second Circuit. Directions should be obtained from the court when necessary.

b) Usually, when the United States requests the arrest or attachment, no deposit is required. This will depend upon the agency involved and the type of action being brought. However, whenever possible, in cases where the initiating government agency is an agency outside the Department of Justice, the initiating government agency should be appointed by the court as substitute custodian at the time the warrant is executed by the U.S. Marshal. It is then the responsibility of the initiating government agency as substitute custodian to bear all costs and expenses pertinent to keeping and maintaining the property following seizure. Substitute custodian orders should not normally be sought in actions initiated by the Department of Justice bureau.

f. *Appointment of Keeper (Custodian).* A "keeper" is a person or party appointed to act on behalf of the U.S. Marshal and may be a Deputy U.S. Marshal or a private person or company. A "substitute custodian" is a person or company, usually appointed at the request of the plaintiff, to act in place of the U.S. Marshal. Insofar as keepers are concerned:

1) They are to receive instructions from and be responsible to the U.S. Marshal and will not adhere to instructions, orders, etc., from other sources.

2) The arresting deputy will review the duties and responsibilities of a keeper with the latter to ensure that the appointed keeper is well acquainted with his/her duties and responsibilities, including any applicable local court rules.

3) Dependent upon the circumstances, it may be necessary to [*1049] obtain a qualified seaman or engineman or both to act as keeper of the vessel (e.g., where engines have to be "turned over" or an anchor watch maintained).

4) If an independent contractor is to be utilized as keeper by the U.S. Marshal then it should be ascertained that the contractor has the capability to perform the service and is financially able to answer for any damages that might result.

5) Under certain circumstances, dependent upon the type and size of the vessel and her condition, a "ship's agent" may be utilized as keeper and that organization will obtain the necessary personnel and equipment required to perform the service.

6) No keeper shall be appointed without an express written agreement for keeper services. (See sample Consent Keeper Agreement at paragraph 6.3-23a.)

g. *Substitute Custodian.* In many instances, a plaintiff will move for the appointment of a substitute custodian to act in place of the U.S. Marshal and his/her keepers. Often this appointment is to take place immediately upon the arrest or attachment of the vessel, the cargo, or the property by the U.S. Marshal. An appropriate court order will accompany the warrant or the writ.

1) In most districts, and whenever possible, orders proposing the appointment of a substitute custodian are presented to the local U.S. Marshal for review prior to the court's review of the documents. These papers should contain proof of financial ability or sufficient insurance coverage to ensure that the substitute custodian and/or the

plaintiff, dependent upon which party has obtained the insurance or is providing the financial security, is able to respond for any damages or injuries that might result from the negligence of the substitute custodian.

2) The order, and not just the substitute custodian's affidavit, should contain a hold-harmless and indemnity clause running in favor of the U.S. Marshal and the United States. (See samples of a Motion and Order for Appointment of Substitute Custodian and Affidavit of Substitute Custodian at paragraphs 6.3-23b and c, respectively.)

[*1050]  3) Even though a substitute custodian is appointed, the U.S. Marshal must continue to maintain on his/her own behalf appropriate insurance covering the seizure until the vessel is sold or released from custody.

4) As appropriate, the United States, if it is the seizing party, may act as a self-insurer. (See sample Order for Appointment of Substitute Custodian at paragraph 6.3-23d.)

5) Whenever a vessel or other property seized is turned over to a substitute custodian, the U.S. Marshal should fill out an appropriate Return and the substitute custodian should fill out an appropriate Receipt of the property. (See sample U.S. Marshal's Return and Receipt at paragraph 6.3-23e.)

6) Generally, an order appointing a substitute custodian also provides that the reasonable expenses of that substitute custodian will be considered administrative expenses. The substitute custodian, or the plaintiff on his/her behalf, is responsible for payment of all custodial expenses incurred. The U.S. Marshal is not responsible for those payments.

6.3-7.  INSURANCE.  The U.S. Marshal shall maintain insurance at all times, including when a substitute custodian has been appointed. Payments for the premiums shall be obtained from the plaintiff as part of the deposit required for the seizure and as subsequently needed.

a.  *Type of Insurance.*  The insurance to be obtained is P&I/Port Risk coverage. This insurance covers the U.S. Marshal, his/her keepers, and the United States only, and does not cover the plaintiff or the defendant. Liability is based upon fault arising from the negligence of the U.S. Marshal or those acting on his/her behalf. Generally, it does not cover pollution claims or claims arising out of underway operations of the vessel. It is not hull insurance (e.g., insurance which will result in payment for loss of the seized property without fault of the U.S. Marshal).

b.  *Availability of Insurance.*  Although arrangements have been made for insurance to be available for the U.S. Marshal, such insurance is not exclusive and a plaintiff may provide other insurance as long as it is at least equivalent in coverage and amount.

[*1051]  c.  *Amount of Coverage Required.*  The amount of the coverage is not limited solely by the value of the property seized. The property may be of relatively low value but the exposure of the U.S. Marshal to potential liability for negligent injury to third parties requires that a minimum of $1 million per seizure be obtained. If the vessel or other property seized is of greater value, then a higher coverage should be required. Additionally, if there are special circumstances (e.g., the vessel contains a dangerous cargo), then this should be taken into consideration.

d.  *Determination of the Coverage.*  Plaintiff should be requested to provide whatever information is available as to the value of the property to be seized. Where the seizure will affect other property (e.g., cargo on a seized vessel), the value of the cargo must also be considered and the coverage adjusted accordingly. Information may also be obtained as to value from local maritime interests (e.g., ships' brokers, ship's agents, etc.).

e.  *Informing the Insurer.*  The insurer should be kept informed of each seizure; the value of the property seized; and whether any special circumstances exist. If the vessel is to be moved or anchored, special provisions may have to be made. Each U.S. Marshal is responsible for those arrangements with the insurer.

f.  *Payment of Insurance.*  If the special U.S. Marshal's policy is utilized, the U.S. Marshal for each district is to pay directly to the insurer the premiums related to his/her seizures.

g.  *Amount of Premium.*  The specific amount of each premium and the method and time of payment, as well as the requirement for the reporting of each seizure, will necessarily depend upon the arrangements made with any particular insurer. Each U.S. Marshal will receive a separate instruction relative to these requirements in relation to any policy arranged for by the Marshals Service.

h.  *Independent Contractor Keepers.*  All independent contractors with whom a U.S. Marshal arranges to act as keeper will have insurance equivalent to that maintained by the U.S. Marshal.

1987 AMC 1041, *

i. *Substitute Custodian.* Substitute custodians should be required to maintain insurance at least equivalent to that maintained by [*1052] the U.S. Marshal when the latter is acting as custodian. If the substitute custodian or the plaintiff have sufficient assets to act as "self insurer," this may be acceptable, dependent upon the circumstances. Insurance coverage is preferred. Arrangements have been made by the Marshals Service for substitute custodians to obtain appropriate insurance. The substitute custodian is responsible for making the payments to the insurer.

j. *Government Employees.* Employees of the government may not sue the U.S. Marshal or the United States since they are covered by the Federal Employees Compensation Act. Thus, they will usually be excepted from the policy coverage.

k. *Production of the Policy.* Since the plaintiff will be paying the premiums for the U.S. Marshal's policy and the substitute custodian's policy, if appropriate, that party is entitled to review a copy of the policy. Each U.S. Marshal's office should have available a copy of the policy covering the U.S. Marshal.

l. *Reporting of Incidents.* Any incident resulting in possible or actual damage or injuries should be immediately reported to the insurer.

6.3-8. THE ACTUAL ARREST. Unless otherwise authorized by statute, a U.S. Marshal may not arrest, attach, or garnish property outside the territorial jurisdiction of his/her district. Thus, a vessel on the high seas (e.g., more than three miles from shore) may not be arrested by the U.S. Marshal. Also, dependent upon the circumstances, not every vessel transitting through the waters of the district may be arrested. Under concepts of international law, the doctrine of "free passage," a vessel may transit territorial waters without being subject to arrest.

6.3-9. SAFETY FACTORS. Although a vessel may be physically located within a district, environmental factors such as storms or heavy seas may render it unsafe to attempt to arrest the vessel (e.g., a vessel at anchor during a storm). The U.S. Marshal is not to take undue risks. Use of helicopters is not recommended under normal circumstances. Usually the Coast Guard will assist in providing water transportation if necessary. Boarding of moving vessels should be avoided. Safety should be the first consideration.

6.3-10. PUBLIC NOTICE OF ARREST OR ATTACHMENT. Sufficient copies of the Notice of Arrest or Attachment to adequately post [*1053] the vessel should be prepared. The original of the Notice is to accompany the complaint and warrant or writ.

6.3-11. WATER TRANSPORTATION. In the event water transportation is necessary to reach the vessel, the deputy will ensure that arrangements for such transportation have been made prior to his/her departure from the office. As stated, the Coast Guard, if available, will assist in this manner in U.S. Government initiated seizures. In private litigation actions, the initiating party is responsible for payment of such transportation costs.

6.3-12. SERVICE OF THE PAPERS. Upon arrival at the vessel, the deputy will serve a copy of the warrant or writ, the complaint, and the Notice of Arrest or Attachment upon the captain or person having custody of the vessel, and affix a copy of the Public Notice in a conspicuous place on the vessel, preferably the wheel house.

a. The captain or person having custody of the vessel is to be informed that the vessel is under seizure and is not to be moved from its present location without the express permission of the U.S. Marshal.

b. Arrangements should also be made to ensure that the keeper has adequate shelter aboard the vessel, including lodging if he/she is to remain aboard at night. Subsistence concerns should be resolved before the deputy returns to his/her office.

c. The keeper should be instructed to contact the U.S. Marshal's office should any unusual circumstances occur and, further, instructed as to maintaining a daily log for the purpose of recording events concerning the vessel.

d. Upon returning to his/her office, the deputy should immediately complete his/her return indicating the exact time, date, and place of seizure, and any other pertinent information required on Form USM-285, including the identity of the keeper.

e. When a vessel is not to be immediately released by the posting of a bond, the U.S. Customs Service should be informed of the seizure and requested to deny clearance to depart the port without notification of release from the Marshals Service [Supplemental Rule E(4) (b)].

1987 AMC 1041, *

[*1054] 6.3-13. SPECIAL PROCEDURES. Upon arresting or attaching the vessel or property, the deputy should determine whether any special procedures are necessary. These will apply whether the vessel is a "dead" vessel or a "live" vessel. (The former refers to situations where the machinery is not operating and/or a crew is not aboard.)

a. If a crew is aboard, all possible information pertaining to the condition of the vessel, its machinery, cargo, lines, anchors, operating capability, etc., should be obtained.

b. Unless the court order or local admiralty rules provide otherwise, all cargo work or repair work is to stop.

c. If the cargo is perishable or there are foodstuffs aboard and the refrigeration units are not operating, notice should be given immediately to the U.S. Marshal so that appropriate arrangements may be made and court orders obtained.

d. If the crew is a foreign crew, the Immigration and Naturalization Service may have to be notified as the crew may not be allowed ashore.

e. If any dangerous conditions relating to the seaworthiness or safety of the vessel or the cargo are found or suspected, it may be necessary to obtain a surveyor.

f. If machinery is to be operated and a crew is aboard, the U.S. Marshal should be notified so that court orders may be obtained relative to use of the crew.

g. In some instances it may be necessary to take photographs of the vessel and its contents.

h. Whenever possible, an inventory should be made as to valuable portable equipment, property, or other items which may be subject to pilferage.

i. No one should be allowed to remove any property from the vessel without appropriate authority. Many vessels contain radios, tape decks and television sets which belong to the vessel owner and are not crew's property.

j. Information should be obtained as to the location and contents of sealed areas and rooms, and keys to the area, if appropriate, should be obtained.

k. The locations and availability of emergency equipment and services, including shoreside equipment and services, should be determined.

[*1055] l. The location and availability of communications equipment for contact with the U.S. Marshal's office and local emergency services should be immediately determined.

6.3-14. SPECIAL SITUATIONS. If at the time of the attempted arrest or attachment, it appears that the vessel is in dangerous condition (e.g., sinking, cargo on fire, etc.), unless the situation had been previously relayed to the U.S. Marshal and/or specifically referred to in the order providing for the arrest or supporting documents thereto, the deputy should refuse to arrest or attach and immediately contact the U.S. Marshal for the purpose of obtaining further instructions, including instructions from the court.

6.3-15. VISITORS TO VESSEL. Unless an order of the court has previously been issued making provisions for visitors to board the vessel, said order also containing an appropriate indemnity provision, all visitors should be required to sign an appropriate waiver form relating to liability for injuries or damage to the property or other persons. (See sample Hold Harmless Agreement and Waiver at paragraph 6.3-23f.)

6.3-16. RELEASE OF VESSEL. A vessel may be released by order of the court. Usually this release is based upon the defendant providing a special bond or a general bond. Dependent upon the type of bond, the parties may also stipulate as to the amount and nature of the security. Additionally, under Supplemental Rule E(5) (c) the U.S. Marshal may release property under arrest, attachment or garnishment, upon the U.S. Marshal's acceptance and approval of a stipulation, bond, or other security, signed by the party on whose behalf the property is detained, or his/her attorney. Such documents must expressly authorize such release. Additionally, all costs and charges of the court and its officers, including the U.S. Marshal, must be paid before the property may be released. Under subparagraph (c) it is not necessary that the defendant also sign the document.

a. Upon release of the detained property, the party receiving custody from the Marshals Service should receipt for the vessel and the items of property shown on the inventory, [Form USM-102 (Seized Property and Evidence Control)]. The party receiving possession should, in the company of the keeper, re-inventory the property or, at the least, be given

an opportunity [*1056] to do so. If that party fails to inspect at the time of the turnover, he/she does so at his/her own risk.

b. Upon receipt of a "stipulation" to release the vessel the U.S. Marshal will release it in a reasonable time. If there are intervenors but they have not "plastered" the vessel or a court order does not otherwise provide, the vessel must be released whenever all parties who have seized the vessel stipulate to such release. The substitute custodian, absent court order, does not have the authority to release a vessel.

6.3-17. SALES OF VESSELS AND PROPERTY. Basically there are two types of sales in which the U.S. Marshal will be involved. They are an interlocutory sale and a final sale.

a. *Interlocutory Sales.* Prior to the final disposition of a case, the court may authorize the sale of a vessel or other property under arrest or attachment. This is usually designated as an "Interlocutory Order of Sale." This type of sale may be ordered due to the perishable nature of the property concerned; because the property or vessel may be liable to deterioration, decay, or damage pending final disposition of the action; the expense of keeping the property or vessel is excessive or disproportionate to its value; or if there is an unreasonable delay in securing the release of said property or vessel. Application for such a sale may be made by any party to the action or on application of the U.S. Marshal [Supplemental Rule E(9) (b)].

b. *Final Judgment Sales.* Here, the sale is based upon the judgment that has been issued at the final disposition of the case.

c. *Forfeiture Sales.* These are sales based upon actions *in rem* to enforce a forfeiture for violation of a statute of the United States. If there are any specific provisions in the statute, the sale should take place in accordance with those provisions. As is the usual situation, the statute rarely, if ever, provides such procedures and the U.S. Marshal should follow the procedures set out in the Supplemental Rules of Civil Procedure. (Refer to Chapter 5, Section 5.5, "Seized Property and Evidence," for further guidance in the disposition of forfeited property.)

d. *Local Admiralty Rules Pertaining to Sales.* In some districts there are extensive local rules pertaining to the performance [*1057] of an admiralty sale. These should be followed whenever possible. If there is any doubt as to the application of any of the specific rules, the court should be requested to issue appropriate instructions. In appropriate circumstances, these local rules will also apply to forfeiture sales.

e. *Sales Orders.* The order authorizing sale of the vessel or other property will be issued by the court. Specific provisions contained therein must be followed by the U.S. Marshal. The U.S. Marshal may set reasonable conditions for the remainder of the actions and requirements in carrying out an auction if they are not outlined or specified in the order itself. Generally, the U.S. Marshal is usually contacted prior to the sale, to determine a convenient date, time, and place for the holding of the sale and, further, as to what conditions or requirements he/she would wish to see included in the order. The proposed order and the actual order issued should be reviewed to determine such things as whether a minimum bid amount has been set; whether there will be required increments in the bidding (e.g., a minimum of $100 or other set amounts required for each bid to increase a prior bid); whether any party will be allowed to "credit bid"; how much of a down payment will be required and the number of days for the balance to be paid; whether there are any limitations as to who may bid (e.g., an alien restricted from bidding on the purchase of American flag vessel); and whether any special methods of payment are designated (e.g., certified check, etc.).

f. *Notice of Sale.* After the order of sale is issued by the court, a notice of the sale must be prepared. Usually this is prepared by the initiating party or his/her attorney. Alternatively, Form USM-62 (Notice of United States Marshal's Sale in Admiralty) can be used. This notice should contain the date, location, time of sale, and all conditions connected with the sale as outlined in the order authorizing the sale. Usually publication of the sale will be by the U.S. Marshal in accordance with local procedure. Some orders may provide for publication in newspapers which are not listed in the local rules or may require publication for a number of days which exceeds those required by the local rules. The U.S. Marshal should remind the newspaper [*1058] publishers of the need to provide him/her with an affidavit of publication immediately subsequent to the required publication. These affidavits must be available for purposes of confirmation of the sale.

g. *The Actual Sale.* The sale should be conducted in the same manner as any public auction. The auction will be opened at the place, date, and time of sale as specified in the court order and Notice of Sale. There should be no change without authority of the court.

1) Prior to the sale, the names of the prospective buyers and the companies they represent, if appropriate, should be obtained by the U.S. Marshal. This listing should be retained in the U.S. Marshal's file as part of the record of the sale to verify the presence of the persons at the sale and to list the bids received from each such prospective buyer.

2) Also, prior to the sale, the deputy conducting the auction will read aloud the requirements specified in the order of sale, including the Notice of Sale. After the reading of those documents and any other documents required by the court to be read at the sale, the deputy will announce that the auction is now open for bids.

3) If a minimum amount has been set by the court, the deputy must state the amount and that all bids must commence from that level. A minimum may not be set by the deputy or by agreement of any other parties without the approval of the court and appropriate notice having been given prior to the commencement of the auction.

4) Each bid should be written down by the deputy or an assistant as it is received and placed alongside the name of that bidder.

5) The deputy selling the property should repeat the highest bid three times and, if no further bids are made, announce that the property is sold to the highest bidder.

6) The name and address of the second and third highest bidder should be taken. In the event the highest bidder does not meet the requirements for the deposit or, subsequently, for payment of the balance, all of the names should be presented to the court at the hearing that will follow. Under [*1059] such circumstances the sale does *not* automatically revert to the second highest bidder. It is within the discretion of the court as to whether the sale should be confirmed to anyone other than the original highest bidder or whether a new sale will have to take place.

7) In most districts, an order of sale will usually provide that any person bidding with the intent to delay or hinder the sale may be subject to sanctions by the court. Even in those situations where there is no specific order or rule pertaining to this problem, the court should be informed of the name of the party involved for the purpose of the court exercising its jurisdiction if it wishes pertaining to interference with a court order.

6.3-18. CONFIRMATION OF SALE.

a. Most districts have local admiralty rules which provide for automatic confirmation of the sale of a vessel. Some do not provide for the issuance of a formal order. The U.S. Marshal should confirm that no objections have been filed before releasing the vessel. Since the automatic confirmation takes effect generally, if no objections are filed, within a certain time period (e.g., three court days), a bill of sale should not be issued by the U.S. Marshal until after the close of the court's business on the specified day. Since the U.S. Marshal's office will also probably be closed at that time, the bill of sale should be issued immediately on the following day.

b. The bill of sale [Department of Transportation Form CG 1356 (Rev. 5-82)] should be completed in original form with at least three copies. The original and one certified copy is to be given to the purchaser; one copy is to be filed with the Clerk of the Court; and the third copy is to be kept for USMS files. The bill of sale is basically a quit-claim deed, "as is, where is," bill of sale without any warranties. Except as provided by statute for certain forfeiture actions, the U.S. Marshal may not issue a warranty deed.

6.3-19. BIDDER'S FAILURE TO PAY, OBJECTIONS TO CONFIRMATION OF SALE, OR NONCONFIRMATION.

a. If the "successful bidder" does not pay the balance required [*1060] in accordance with the court order or otherwise defaults, the U.S. Marshal should immediately notify the court relative to further instructions or for a hearing pertaining to a possible second sale or confirmation of the sale to another bidder. Generally, the deposit money received from the "successful bidder" will be used to pay the added costs of maintenance and upkeep until the vessel is either subsequently sold or otherwise disposed of in accordance with a court order.

b. In those instances where objections to the confirmation of the sale are filed, normally the local rules provide that the person making the objection shall deposit a sufficient sum with the U.S. Marshal to cover the cost of maintenance and upkeep during the time required for the determination of the validity of the objection. Also, generally, local rules provide for further payments if the objection is upheld or denied. If there are no local rules pertaining to this particular situation, instructions should be requested from the court as to payments to be made in the interim.

6.3-20. PROCEEDS OF SALE. In accordance with Title *28 U.S.C. 1921*, the U.S. Marshal is entitled to his/her fees, commission and expenses; said amounts to be taken out of the proceeds of the sale. The balance is then, usually,

1987 AMC 1041, *

paid into the Registry of the Court. (Refer to Chapter 3, Section 3.22, "Assets Forfeiture Fund," and Chapter 5, Section 5.5, "Seized Property and Evidence," for further guidance in paying the expenses and the disposition of proceeds related to forfeiture actions.)

a. In some circumstances, the court order may provide for other payment of the proceeds or, in some way, may refer to the U.S. Marshal's deducting his/her fees, commission and expenses. The U.S. Marshal should conform to the terms of the order but should immediately notify the Marshals Service as to any problem related to the payment.

b. In private actions, for admiralty sales the U.S. Marshal is entitled under Title *28, U.S.C. 1921* to his/her fees, commission and expenses when the purchaser is a credit bidder. The purchaser should be notified of the necessity of paying those amounts. As a rule, the U.S. Marshal should not deduct any costs from proceeds of sale on forfeiture actions brought by [*1061] the United States. Such costs would already have been paid from the Assets Forfeiture Fund. See Chapter 3, Section 3.22, for further guidance in the disposition of forfeiture sale proceeds.

c. When the proceeds of the sale are turned in to the Clerk of the Court, they must be accompanied by a U.S. Marshal's bill showing his/her fees and expenses, including his/her commission. The proceeds of the sale and the U.S. Marshal's bill should be submitted to the court as soon as possible. Thus, it is important that all bills be kept current during the detention period.

d. Unless there are local rules specifically pertaining to the circumstances, or objections are submitted as to the U.S. Marshal's bill, no motion is necessary to confirm the payments to the U.S. Marshal. If any objections or problems arise as to these payments the Marshals Service should be immediately notified.

6.3-21. LOCAL RULES. The U.S. Marshal must comply with the specific provisions of the local rules for his/her district. If there are any problems or questions related to the implementation of those rules, the U.S. Marshal should contact the court for instructions.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

----------------------------------------------------------- X

2002 SEP 24  A 10: 54

D.N. KELLEY & SON, INC,
U.S. DISTRICT COURT
DISTRICT OF MASS.
                    Plaintiff,

vs.                                              CIVIL ACTION NO. 02-10072 JLT
                                                 **IN ADMIRALTY**

M/V NEW MOON (O.N. No. 550243), her engines,
tackle, apparel, appurtenances, etc., *in rem,*

                                                 **FIRST AMENDED ORDER**
                    Defendant.                   **FOR INTERLOCUTORY SALE**
                                                 **OF DEFENDANT VESSEL**

----------------------------------------------------------- X

TO THE UNITED STATES MARSHAL FOR THE DISTRICT OF MASSACHUSETTS
OR HIS DEPUTIES:

WHEREAS, the expenses of the attachment and the keeping of the defendant vessel, M/V

NEW MOON (O.N. No. 550243), *in custodia legis* are continuing and include the fees of the

United States Marshals Service and the plaintiff/court-appointed substitute custodian, D.N.

KELLEY & SON, INC.; and

WHEREAS, plaintiff has shown good cause for an interlocutory sale and that it is in the

best interests of all concerned parties that defendant vessel be sold;

Accordingly it is hereby ORDERED:

That the defendant vessel, M/V NEW MOON (O.N. No. 550243), her engines, tackle,

apparel, and appurtenances (hereinafter referred to as "Vessel") shall be sold by the United States

Marshal for the District of Massachusetts, or one of his deputies, at public auction, free and clear

of all liens and encumbrances, to satisfy the costs and expenses of the United States Marshals

Service and the substitute custodian, if any, and to satisfy, in whole or in part, the judgment

which plaintiff and other interested parties, if any, seek to have entered in this matter.

YOU ARE THEREFORE COMMANDED TO:

1.  Sell the Vessel at public auction for the highest price that can be obtained, free and clear of all liens and encumbrances. The sale, which is subject to confirmation by the District Court, shall be held upon or adjacent to the Vessel at D.N. KELLEY & SON, INC., 32 Water Street, Fairhaven, Massachusetts 02719 on **Friday, November 1, 2002, at 12:00 p.m.,** local time.

2.  Require plaintiff, D.N. KELLEY & SON, INC., to give notice of the date, time, and place of the sale to (i) the owner and all lien holders of record by first class mail and (ii) the public-at-large by advertising same at least once per week for two successive weeks in the Boston Herald and The Standard-Times, the first advertisement in each publication to be at least seven (7) days prior to the date of sale.

3.  Require the highest qualified bidder at the sale, a person eligible to own a documented vessel under Title 46 of the United States Code, to deposit with the United States Marshals Service the sum of $10,000.00 in cash or certified or bank check payable to the United States Marshal for the District of Massachusetts, with the balance to be paid at or before the confirmation hearing.

4.  Allow plaintiff, D.N. KELLEY & SON, INC., to bid the amount of the indebtedness owed by the vessel and its owner, at said public sale and deposit the amount of the indebtedness with the United States Marshal in lieu of cash should it be the highest bidder.

2

5. Pay or deliver into the Registry of the District Court any and all monies or notes received as a result of the sale.

6. Prepare such documents and reports as may be necessary for the confirmation of sale by the District Court. The confirmation hearing shall be held at the United States District Court for the District of Massachusetts at Boston on the November **26**, 2002, at **10** a.m./ The time and date of the confirmation shall be set forth in the notice of sale to the owner and lien holders of record and announced to the public-at-large at the sale.

Dated at Boston, Massachusetts on this **24** day of September, 2002.

Joseph L. Tauro, District Judge
United States District Court

Submitted by:
Norman A. Peloquin, II
Attorney for D.N. KELLEY & SON, INC.
NORMAN A. PELOQUIN, II, P.C.
Morad Building, 460 County Street
New Bedford, MA 02740-5107
Tel. (508) 991.2300

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------X

NORTH FORK WELDING & STEEL SUPPLY,   :
INC., GREENPORT YACHT & SHIPBUILDING   :
CO., INC., and HANDS FUEL COMPANY,   :

                Plaintiffs,   :        CIVIL ACTION 04 10843 JLT
                   :        **IN ADMIRALTY**
               -and-   :

LONG ISLAND DEVELOPMENT CORP.,   :
and SMALL BUSINESS ADMINISTRATION,   :

          Plaintiffs-In-Intervention,   :

vs.   :
                   :

F/V PRINCE OF PEACE (O.N. No.631110),   :        **INTERLOCUTORY SALE OF**
her engines, tackle, apparel, appurtenances, etc.,   :        **DEFENDANT VESSEL**
*in rem*, and ROYALTY SEAFOOD, INC.,   :
*in personam*,   :

            Defendants.   :
                   :
------------------------------------------------------------ X

      TO THE UNITED STATES MARSHAL FOR THE DISTRICT OF MASSACHUSETTS

OR HIS DEPUTIES:

      WHEREAS, the expenses of the attachment and the keeping of the defendant vessel,

PRINCE OF PEACE (O.N. No.631110), *in custodia legis* are continuing and include the fees of

the United States Marshals Service and the court-appointed substitute custodian; and

      WHEREAS, plaintiffs have shown good cause for an interlocutory sale and that it is in

the best interests of all concerned parties that defendant vessel be sold;

      Accordingly it is hereby ORDERED:

That the defendant vessel, PRINCE OF PEACE (O.N. 631110), her engines, tackle, apparel, and appurtenances, including, but not limited to, her commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, privileges or entitlements arising from, issued to, attaching to, or appurtenant to the said vessel(hereinafter referred to as "Vessel") shall be sold by the United States Marshal for the District of Massachusetts, or one of his deputies, at public auction, free and clear of all liens and encumbrances, to satisfy the costs and expenses of the United States Marshals Service, the substitute custodian, and plaintiffs herein, and to satisfy, in whole or in part, the judgment which plaintiffs and any other interested parties seek to have entered against the said Vessel in this matter.

YOU ARE THEREFORE COMMANDED TO:

1. Sell the defendant vessel, PRINCE OF PEACE (O.N. 631110), her engines, tackle, apparel, and appurtenances, including, but not limited to, her commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, privileges or entitlements arising from, issued to, attaching to, or appurtenant to the said vessel, at public auction for the highest price that can be obtained, free and clear of all liens and encumbrances. The sale which is subject to confirmation by the District Court is to be held upon or adjacent to the Vessel which is located at Fairhaven Shipyard & Marina, Inc., 50 Fort Street, Fairhaven, Massachusetts 02719 on **Wednesday, August 27, 2003, at 12:00 p.m.**, local time.

-2-

2.    Require plaintiffs to give notice of the date, time, and place of the sale to (i) the vessel owner and all mortgagees and lien holders of record with the United States Coast Guard's National Vessel Documentation Center, by first class mail; (ii) the public-at-large by publishing notice of the sale at least once per week for two successive weeks in the Boston Herald, the first notice to be published at least seven (7) days prior to the date of sale; and (iii) the public-at-large by publishing notice of the sale at least once per month in the national trade journal, Boats & Harbors, the first notice to be published at least seven (7) days prior to the date of sale.

3.    Require the highest qualified bidder at the sale, a person eligible to own a documented vessel under Title 46 of the United States Code, to deposit with the United States Marshals Service the sum of $10,000.00 in cash or certified or bank check payable to the United States Marshal for the District of Massachusetts, with the balance to be paid at or before the confirmation hearing.

4.    Allow plaintiffs to credit bid the amount of their collective indebtedness owed by defendant vessel and its owner, at said public sale and deposit that amount with the United States Marshal in lieu of cash should they be the highest bidder.

5.    Pay or deliver into the Registry of the District Court any and all monies or notes received as a result of the sale.

-3-

6.  Prepare such documents and reports as may be necessary for the confirmation of sale by the District Court. The confirmation hearing shall be held at the United States District Court for the District of Massachusetts at Boston on the 9th day of September, 2003, at 2:30 a.m./p.m. The time and date of the confirmation shall be set forth in the notice of sale to the owner of the vessel, the mortgagees, the lien holders of record, and shall be announced to the public-at-large at the sale.

Dated at Boston, Massachusetts on this 18th day of July, 2003.

_Judith Gail Dein_
Judith G. Dein Dein
United States Magistrate Judge

Presented by:

Norman A. Peloquin, II
Attorney for Plaintiffs
NORMAN A. PELOQUIN, II, P.C.
Morad Building, 460 County Street
New Bedford, MA 02740-5107
Tel. (508) 991.2300
Fax (508) 991-8300

-4-